WRIGHT ET AL. *vs.* STOTT, ADMINISTRATOR.

. [ACTION ON PROMISSORY NOTE.]

1. *Administrator ; what contract of makes liable.* — Where a purchaser at an executor's sale of his testator's personal property made in 1860, by agreement with the executor in 1864, settled his debt with Confederate currency, which he immediately received back as administrator of a deceased distributee's estate in part payment of his intestate's share, — *Held,* the contract was supported by such partial payment, and the purchaser was liable, as administrator, to the estate he represented, and not as debtor to the estate from which he purchased.

APPEAL from Circuit Court of Butler.
Tried before Hon. P. O. HARPER.

At a sale of the personal property of the estate of James Craigg, made by his executors in 1860, the appellants purchased a mule and gave their promissory note therefor, payable to the executors on the 1st of March, 1861. In 1864 the appellant, Wright, paid the note with Confederate currency, which one of the executors agreed to receive, on the condition that Wright, who was the administrator of Wm. G. Craigg, one of the distributees of the testator, would receive it back in payment of so much of his intestate's interest. The condition was complied with and the note was given up. This executor, in his final settlement

in 1866, reported this note as still the property of the estate of his testator, received credit for it as uncollected assets and turned it over to his successor, Stott, who brought this suit for its collection. The court charged that it was a subsisting demand against the defendants in favor of the plaintiff.

GAMBLE & POWELL, for appellants.—The charge of the court, however, as given, withdraws from the jury the consideration of any fact tending to show that the party rightfully entitled to the proceeds of the note sued on had ratified the transaction, and hence tended to mislead the jury. "A charge is erroneous which withdraws from the jury any facts, however weak, which tend to establish the point in issue;" because such charges tend to mislead,—See *Edgar v. McArn*, 22 Ala. 796; *Pritchett v. Munroe*, 22 Ala. 501; *Reese v. Beck*, 24 Ala. 651; *Upson v. Raiford*, 29 Ala. 188. The point in issue in the case at bar is, the payment of the notes and the charge given, withdrew from the jury every fact of a ratification of the payment by the party rightfully entitled to the notes or the proceeds.

2. Now, if Wright, clothed with authority and being the only party legally entitled to receive this legacy, ratified the payment made by Wright and Rouse, the appellants in this case, and received the money in discharge of such legacy due to him as such representative, we insist that this was a good payment and extinguished the debt.—See *Chapman, Lyon, & Hays v. Cowles*, 41 Ala. 103; *Dubberly v. Black's Adm'r*, 38 Ala. 193; *West, Olive & Co. v. Ball & Crommelin*, 12 Ala. 340. Hence the pertinency of the evidence of R. R. Wright and the other witness for the defendant, and the court therefore erred in giving the charge. Because it withdrew from the jury the consideration of these facts.—See *Edgar v. McArn, supra, etc.* A payment of a debt in Confederate money is not *ipso facto* a void payment.—See on this point *Cannon v. McNab*, January term, 1871; *Hale v. Houston, Sims & Co.*, January

14

term, 1870 ; *Herbert & Gessler, v. Easton*, 43 Ala. 547, June term, 1869. If, then, the payment in Confederate money is not *ipso facto* void, the charge given withdrew the consideration of any fact in this point from the jury, and was therefore erroneous as tending to mislead the jury.

HERBERT & BUELL, *contra*.—The charge complained of simply asserts that an administrator had no right to collect in Confederate treasury notes a note payable to the estate in "dollars," ·the note having been made before the war, without showing some valid reason why he did so.

The decisions of this court, to the effect that such currency was not money, are too many and too familiar to require quotation.

The only show of excuse shown to the court was that Henry, the executor of Craig, had at the same time paid the Confederate money he had taken from Wright, as an individual, back to Wright as *administrator of one of the distributees*.

If Henry had no right to take as executor, Wright had no authority to take as administrator. If Henry was guilty of a conversion, Wright had no power to ratify this conversion. To allow this, would be to permit these two representatives to entirely destroy the estates they represented—one of them ratifying the wrong of the other, for if Wright could ratify for Henry, Henry could ratify for Wright, and the estates would be at their mercy.

American Law Review for October 1869, p. 125, under head of State decisions, says: "Administrators, attorneys, and the like, never had the right to receive Confederate money in payment of debts due them in their representative capacity," citing *Succession of Lagarde*, 20 La. An. R. 148; *Davis v. Lee, ib.* 248; *Fry v. Dudley ib.* 368; *Wingfield v. Crosby*, 5 Cold. 241 ; to which could be added numerous decisions of this court.

But it is contended that it was error to withdraw from the consideration of the jury the fact that Wright, as ad-

ministrator of W. G. Craig, one of the distributees of the estate of James Craig, deceased?

The charge is not obnoxious to the criticism made by appellant. This was no application of the fund to the payment of *a debt of the estate.*

2. It was not even payment to the administrator of an estate not connected with the estate represented by Henry. The distributees of the estate of Wm. G. Craig were really interested in the estate Henry was controlling. Henry and Wright were both responsible to these distributees for their trusts, and the law would not permit them to combine to destroy the trust fund. What injury was it to withdraw this transaction from the consideration of the jury, when it could not possibly amount to any justification. It did not tend to prove any ratification by the *cestui qui trusts,* who alone had the power to ratify this illegal conversion. If that transaction was in the judgment of this court legal, then it follows that neither the distributees of James Craig nor of Wm. G. Craig can hold either administrator responsible, and that Wright, who represents one of these estates, has a right to account to the distributees, whom he represents, in worthless currency for property in which they were interested, and for which he agreed to pay in good money.

This is opposed by all the decisions of this court upon the subject.

B. F. SAFFOLD, J.—The charge can only be sustained on the assumption that Wright's acquisition of the note was in consideration only of his payment of the Confederate currency, and that this amounted to nothing at all. Such is not a proper application of the principles governing the use of Confederate currency as declared by this court. Under certain circumstances an executor or administrator is entitled to credit for assets of the estate he represents collected in this currency.—*Houston v. Deloach,* 43 Ala. 364. A party can not of his own volition repudiate an executed contract made with him, as the executor, Henry, attempted to do in his final settlement.—*Ponder v. Scott,* 44 Ala. 241.

It was not shown that the plaintiff had exhausted his remedy against the executor or that he was insolvent.

On the other hand, Wright made himself responsible to the estate he represented for the amount of the debt. He gave other consideration for the note than the Confederate currency. He acknowledged payment to him of part of the interest of his intestate. This was the real and sufficient consideration of the contract between him and the executor of James Craig. The note was mere evidence of a debt, which the parties, authorized to do so, settled. They became responsible to their respective beneficiaries for the settlement made.

The judgment is reversed and the cause remanded.